

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-2004

# USA v. Adedoyin

Precedential or Non-Precedential: Precedential

Docket No. 02-3042

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Adedoyin" (2004). *2004 Decisions.* Paper 635.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/635

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

No. 02-3042

UNITED STATES OF AMERICA,

v.

LAWRENCE FAMAKINDE
ADEDOYIN
a/k/a
LAWRENCE FAMAKINDE
OMOADEDOYIN
a/k/a
LAWRENCE FAMAKINDE
a/k/a
SIR LAWRENCE ADEDOYIN
a/k/a
LAWRENCE OMOADEDOYIN
a/k/a
FAMAKINDE LAWRENCE
ADEDOYIN
a/k/a
ADEDOYIN FAMAKINDE

Lawrence Adedoyin,

Appellant

On Appeal from the United States
District Court
for the District of New Jersey
(D.C. Crim. No. 99-cr-00239)
Honorable William H. Walls,
District Judge

Argued April 21, 2004

BEFORE: SCIRICA, Chief Judge,
ROSENN and GREENBERG,
Circuit Judges

(Filed May 28, 2004)

Christopher J. Christie
United States Attorney
George S. Leone
Chief, Appeals Division
Sabrina G. Comizzoli (argued)
Assistant United States Attorney
Office of the United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

Attorneys for Appellee

Paul B. Brickfield (argued)
Brickfield & Donahue
70 Grand Avenue
River Edge, NJ 07661

Attorneys for Appellant

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

This matter comes on before this
court on Lawrence Adedoyin's appeal
from a judgment of conviction and

sentence entered in this criminal case on July 15, 2002.[1] The district court exercised jurisdiction under 18 U.S.C. § 3231 and we exercise jurisdiction pursuant to 28 U.S.C. § 1291.

The background of the case is as follows. Adedoyin is a Nigerian national who has entered the United States on several occasions. In August 1981, Adedoyin, then using the name Lawrence Omoadedoyin, pled nolo contendere in the Superior Court of California to a felony. As a result of his plea, Adedoyin was convicted and sentenced to one year in prison and three years on probation. In 1985, an immigration judge in San Francisco ordered Adedoyin, who was using the name Lawrence Omoadedoyin, deported. At that time the judge issued a Warrant of Deportation and Adedoyin left the country.

Adedoyin, however, returned to the United States on November 27, 1994. Prior to returning, Adedoyin obtained a Nigerian passport under the name Adedoyin Famakinde which he used successfully in obtaining a United States visa. At the time he applied for the visa, Adedoyin, in responding to a question in the application as to whether he had any criminal convictions, answered negatively and accordingly did not disclose his 1981 California conviction.

After returning to the United States Adedoyin, from 1997 through 1999, attempted to set up a television network promoting African and African-American heritage. While engaging in this endeavor, Adedoyin failed to pay several landlords, vendors and his own employees. He also bounced a $180,000 check to a vendor who had agreed to provide satellite access for the television station.

Adedoyin's conduct led to an indictment in the proceedings culminating in this appeal. After a superseding indictment was filed, a second superseding indictment was filed on July 24, 2001. The second superseding indictment charged Adedoyin with two counts of improper entry into the United States by an alien, in violation of 8 U.S.C. § 1325(a) and 18 U.S.C. § 2; two counts of fraud and misuse of visas, permits and other documents, in violation of 18 U.S.C. §§ 1546(a), 2; three counts of mail fraud, in violation of 18 U.S.C. §§ 1341, 2; and three counts of wire fraud, in violation of 18 U.S.C. §§ 1343, 2. Adedoyin entered a plea of not guilty to all charges and moved to sever the mail and wire fraud charges from the entry and visa counts. The court granted the motion and determined that the mail and wire fraud case would be tried first. After various continuances and changes of counsel, Adedoyin's trial on the mail and wire fraud counts was scheduled to start on September 11, 2001, but the Islamic terrorist attacks which, <u>inter</u> <u>alia</u>,

---

[1]The district court issued an amended judgment on August 5, 2002.

2

destroyed the World Trade Center prevented the case from going forward. Consequently, the court rescheduled the trial for September 19, 2001.

Prior to the commencement of trial on September 19, 2001, Adedoyin moved for a 90-day postponement. He argued that he could not receive a fair trial in the wake of the attack on the World Trade Center because he was a foreign national alleged to have perpetrated a fraud against, among other individuals and entities, the World Trade Center. The court denied Adedoyin's motion, stating that inasmuch as he was a Nigerian national and was not of Middle Eastern descent, there was little risk that the jury unfairly would link him to the events of September 11th. The court also cited the long delay in bringing the case to trial. Nevertheless, to address Adedoyin's concerns, the court questioned the jurors individually to determine if each could be fair and impartial even though there were allegations that he had defrauded the World Trade Center. Each of the impaneled jurors informed the court that he or she could be fair and impartial.

At trial, the government presented various witnesses to prove the mail and wire fraud alleged against Adedoyin. Former landlords, vendors and former employees of the television network testified against Adedoyin, detailing his failure to make payments. In addition, persons Adedoyin had solicited testified that he sent out letters offering to provide major corporations with one-hour promotional videos to be aired on the television network for $150,000. In an attempt to counter the government's evidence, Adedoyin offered two witnesses. The first, Wilfred Warrick, was involved with Adedoyin at the time of trial in setting up another television station seeking to promote Africa and African culture. The court asked Warrick several questions in an attempt to obtain information about the new venture.

Adedoyin concluded his defense with his own testimony. He testified that a form which he presented to a representative from U.S. Media to show that his business was economically viable was a projection of his future income rather than a reflection of money he actually had earned. The court questioned Adedoyin on this point. At the conclusion of the trial, on October 5, 2001, the jury returned a verdict of guilty on the three mail fraud counts and not guilty on the three wire fraud counts.

The trial on the four entry and visa charges began on November 27, 2001. At trial, the district court, over Adedoyin's objection, admitted a certified copy of his 1981 California felony conviction. As we have set forth, Adedoyin had pled nolo contendere to the charges which led to that conviction. Adedoyin attempted to prevent evidence of the conviction from being admitted, pointing out that Rule 410 of the Federal Rules of Evidence, except in certain

circumstances not relevant here, prohibits the admissibility of "a plea of nolo contendere." Fed. R. Evid. 410(2). The district court overruled his objection and admitted the certified copy of the 1981 conviction. At the conclusion of the trial, the jury found Adedoyin guilty of two counts of improper entry into the United States by an alien but not guilty of two counts of fraud and misuse of visas, permits and other documents. After the court sentenced Adedoyin on both sets of convictions he timely appealed.

## II. DISCUSSION

Adedoyin raises three separate issues on this appeal. First, he maintains that the district court abused its discretion in denying his motion for a 90-day continuance in the wake of the September 11, 2001 terrorist attacks. Second, Adedoyin argues that the district court further abused its discretion in asking questions of both him and defense witness Wilfred Warrick. Finally, Adedoyin claims that the district court erred in admitting evidence that he previously had been convicted of a felony on the basis of a plea of nolo contendere. We will address each claim in turn.

### A. Denial of a further continuance

We review the district court's denial of Adedoyin's motion for a 90-day continuance for abuse of discretion. See United States v. Lattany, 982 F.2d 866, 870 (3d Cir. 1993). Under 18 U.S.C. § 3161(h)(8)(A), a district court is empowered to grant a continuance in a criminal trial under the Speedy Trial Act if it makes findings "that the ends of justice" would be served best by such a delay. Prior to trial on the mail and wire fraud charges, Adedoyin sought a 90-day postponement of the proceedings due to the September 11, 2001 terrorist attacks. As we have indicated, Adedoyin argued that because he was a Nigerian national and one of the alleged victims of his fraudulent activities was the World Trade Center, he would be unable to receive a fair trial. The court denied the motion for continuance and the mail and wire fraud case proceeded to trial on September 19, 2001, eight days after the terrorist attacks. The court reasoned that the case had been delayed on several occasions because Adedoyin frequently had changed attorneys and the court stated that inasmuch as Adedoyin was of Nigerian origin and not of Middle Eastern descent and the allegations involved charges of fraud rather than violent action, starting the trial so soon after September 11, 2001, would not prejudice him.

We reiterate that to ascertain if the terrorist attacks would prejudice Adedoyin, the court conducted an individual voir dire of each juror to determine whether the events of September 11, 2001, would affect his or

4

her ability to be fair and impartial.[2] Each

[2]The judge individually asked each juror the same question (although varying the wording slightly with each juror). For example, the court stated to juror number three:

> As I told you and your colleagues at the outset, this case involves charges by the government that the defendant, Mr. Adedoyin, committed acts of mail and wire fraud. And, one of the victims, one of the alleged victims in this case, according to the government, is the World Trade Center. That is because the government claims that he allegedly defrauded the World Trade Center of rent due for office space that had been rented in one of the towers.

> Now, in light of what happened last Tuesday, does that fact that one of the alleged victims in this case, there are about ten alleged victims, does that fact that one of them is the World Trade Center effect in any way your ability to provide a fair trial to Mr. Adedoyin?

juror informed the court that he or she could be fair and impartial.

Adedoyin maintains that "[i]n refusing to grant the stay, the defendant's right to a fair trial was severely prejudiced." Appellant's br. at 9. While he recognizes that each juror informed the court, during individual questioning, that he or she could be fair and impartial, Adedoyin states in his brief that "one questions whether jurors could truly understand or acknowledge the depth of their feelings so soon after this unique national tragedy." Appellant's br. at 12.

The Supreme Court has "stressed the wide discretion granted to the trial court in conducting voir dire in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias." Mu'Min v. Virginia, 500 U.S. 415, 427, 111 S.Ct. 1899, 1906 (1991). The trial court here exercised its discretion with great care and determined that Adedoyin could receive a fair trial in the wake of the September 11th terrorist

Supp. app. at 7.

All 12 jurors answered this question no. The court further asked if each juror knew any victims of the terrorist attacks and whether any relationships with victims would affect the juror's ability "to be fair and impartial in this trial involving Mr. Adedoyin?" Id. at 8. Each juror who knew victims answered no.

5

attacks. As stated above, the criminal activity of which he was charged at the first trial, that is mail and wire fraud, had no similarity to the terrorism of that horrific day. Nor was Adedoyin's national origin similar to that of the terrorist attackers and he hardly could be confused with them. In this regard we can take judicial notice of the fact that by September 19, 2001, there had been massive publicity in the United States as to the Middle Eastern origin of the terrorists. See Fed. R. Evid. 201(b).

The district court determined that the allegation that Adedoyin defrauded the World Trade Center of rent several years prior to the terrorism on September 11, 2001, could be addressed fairly by the jury. As a means of determining whether the jury in fact could be fair, the court conducted an individual voir dire of each juror. In view of these cautious procedures, we cannot say that the court abused its discretion in denying Adedoyin's motion for a 90-day postponement. See, generally, United States v. Koubriti, 252 F. Supp. 2d 437 (E.D. Mich. 2003) (finding that postponement until the end of the war against Iraq was not warranted in case where defendants of Middle Eastern descent were indicted on charges of, among other things, conspiracy to provide material support or resources to terrorists) ; United States v. El-Jassem, 819 F. Supp. 166, 177-79 (E.D.N.Y. 1993) (holding that defendant of Middle Eastern descent convicted of attempting to explode three car bombs was not entitled to a new trial where trial took place immediately after the first World Trade Center terrorist attack in 1993); see also United States v. Lampley, 127 F.3d 1231, 1235-39 (10th Cir. 1997) (finding that it was not plain error for the district court to conduct trial of defendants on charges of, among other things, conspiracy to make and possess a destructive device, on the one-year anniversary of the bombing of the Alfred P. Murrah Federal Building in Oklahoma City). We therefore will uphold the district court's decision not to postpone the trial.

B. The court's questioning

Our review of the district court's questioning of Adedoyin and Warrick pursuant to Federal Rule of Evidence 614(b) is for abuse of discretion. If we find that the court abused its discretion, we must determine whether the questioning was harmless or prejudiced Adedoyin's substantial rights. See United States v. Beaty, 722 F.2d 1090, 1093 (3d Cir. 1983).

Federal Rule of Evidence 614(b) provides that the district court may interrogate witnesses. Inasmuch as a trial is "a search for the truth" and the court is more than a "mere umpire" of the proceedings, it is certainly within its province to question witnesses. Riley v. Goodman, 315 F.2d 232, 234 (3d Cir. 1963) (citations omitted). However, as we have recognized, a judge must not "abandon his [or her] proper role and

6

assume that of an advocate." <u>United States v. Green</u>, 544 F.2d 138, 147 (3d Cir. 1976).

We find that the district court did not abuse its discretion in asking questions of Adedoyin and Warrick, though we acknowledge that the court approached close to the limit of what would be appropriate questioning. Moreover, we point out that the jury found Adedoyin guilty on the mail fraud counts but not guilty on the wire fraud counts. This mixed verdict tends to demonstrate that the jury did not simply take the court's questioning as a signal to find Adedoyin guilty and that the court's questioning did not prejudice Adedoyin.

C. <u>The prior conviction</u>

We review the court's ruling admitting the 1981 conviction on an abuse of discretion standard. Nevertheless to the extent that it based its determination on an interpretation of the Federal Rules of Evidence our review is plenary. <u>United States v. Furst</u>, 886 F.2d 558, 571 (3d Cir. 1989).

Count II of the second superseding indictment charged Adedoyin with attempting to enter the United States on November 27, 1994, in violation of 8 U.S.C. § 1325(a) and 18 U.S.C. § 2, by willfully concealing that he had been convicted in the United States of having committed a felony.[3] The jury convicted him on this count. Therefore, it found him guilty of attempting to enter or obtain "entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact." 8 U.S.C. § 1325(a).

Prior to trial on the four entry and visa counts, Adedoyin brought a motion <u>in limine</u> seeking to prevent the prosecution from introducing evidence of his 1981 felony conviction in California, arguing that under Federal Rule of Evidence 410 that conviction, which was pursuant to a plea of nolo contendere, was not admissible. Rule 410 provides, in relevant part, "[e]xcept as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions: . . . (2) a plea of nolo contendere." Surprisingly, we seem not to have controlling precedent on the admissibility of a conviction predicated on a plea of nolo contendere as distinguished from

---

[3]Count I charged that Adedoyin had violated that same statute when he attempted to enter the United States using the alias of Adedoyin Famakinde. This count did not implicate his felony conviction. Defendant was convicted on Counts I and II, but acquitted on Counts III and IV for fraud and misuse of visas, permits and other documents.

7

the admissibility of the plea itself.

The Advisory Committee Notes to Rule 410 recognize that the exclusion of nolo contendere pleas as admissible evidence promotes the disposition of criminal cases. As several other courts of appeals have recognized there is, however, a clear distinction between pleas of nolo contendere and convictions entered on the basis of such pleas. See Brewer v. City of Napa, 210 F.3d 1093, 1096 (9th Cir. 2000) ("Rule 410 by its terms prohibits only evidence of pleas (including no contest pleas), insofar as pleas constitute statements or admissions."); Olsen v. Correiro, 189 F.3d 52, 58 (1st Cir. 1999) ("The evidentiary rules that exclude evidence of nolo pleas do not directly apply to the convictions and sentences that result from such pleas."); Myers v. Sec'y of HHS, 893 F.2d 840, 843 (6th Cir. 1990) (stating that Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6) "prohibit use of 'a plea of nolo contendere,' not a conviction pursuant to a nolo plea") (citation omitted); United States v. Williams, 642 F.2d 136, 138 (5th Cir. 1981) ("A judgment entered on a plea of nolo contendere adjudicates guilt with the same finality and force as a judgment entered pursuant to a guilty plea or conviction following trial.").

We agree with the persuasive reasoning of the court in Olsen v. Correiro, 189 F.3d at 58-62, that convictions based on pleas of nolo

contendere are admissible to prove the fact of conviction. It is true that a plea of nolo contendere is not an admission of guilt and thus the fact that a defendant made such a plea cannot be used to demonstrate that he was guilty of the crime in question. See id. at 60. Nevertheless, a plea of nolo contendere has the same legal consequences as a plea of guilty and results in a conviction. See Brewer, 210 F.3d at 1096; Myers, 893 F.2d at 844; Williams, 642 F.2d at 138 ("It is well settled that a plea of nolo contendere admits 'every essential element of the offense (that is) well pleaded in the charge.'") (citations omitted).

At trial, the prosecution did not seek the admission of a certified copy of Adedoyin's conviction for the purpose of proving that he was in fact guilty of a felony in 1981. The prosecution put forth the evidence in order to show that he previously had been convicted of a felony which he failed to disclose when he sought entry into the United States.[4]

_____

[4]During the charge to the jury, the district court stated:

Evidence that the defendant Adedoyin was convicted of having committed a crime in California in 1981 has been admitted into evidence. But you may consider that evidence only in

8

See Pearce v. United States Dep't of Justice, 836 F.2d 1028, 1029 (6th Cir. 1988) ("Notwithstanding Rule 410, a conviction pursuant to a nolo contendere plea is a conviction within the meaning of [21 U.S.C. § 824] and gives rise to a variety of collateral consequences in subsequent proceedings."); Qureshi v. INS, 519 F.2d 1174, 1176 (5th Cir. 1975) ("[I]t is the fact of conviction that is of moment here, not the collateral evidentiary uses of whatever plea may have resulted in it.").

Indeed, it did not even matter in this case whether Adedoyin was guilty of the California crime. The material question at trial was whether his representation that he did not have a criminal conviction was willfully false or misleading and the conviction, though based on a plea of nolo contendere, established that his representation was false, though not necessarily willfully so. Thus, evidence of it was admissible.

---

connection with whether or not the government has established beyond a reasonable doubt that Mr. Adedoyin concealed that prior conviction in regard to his application to obtain a United States visa for purposes of attempting to enter the United States.

App. at 858.

For the first time on appeal, Adedoyin challenges the admissibility of the certified copy of the conviction as hearsay that falls outside of the ambit of Federal Rule of Evidence 803(22). That rule states, in pertinent part, that "[e]vidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the Government in a criminal prosecution for purposes other than impeachment" is not hearsay. Adedoyin argues that the exception for judgments based on pleas of nolo contendere prevents the admission of the certified copy of the judgment. Even assuming that we should address this issue in the first instance, Adedoyin's argument is without merit. The district court admitted the certified copy of the conviction pursuant to Federal Rule of Evidence 803(8) as a public record and not under Rule 803(22). App. at 808-09. Furthermore, Rule 803(22) deals with evidence introduced "to prove any fact essential to sustain the judgment." As explained above, the certified copy of Adedoyin's conviction was not introduced for the purpose of establishing any of the facts related to the underlying conviction. It was admitted to prove the fact of the conviction itself.

The Advisory Committee's Note to Rule 803(22) states, "[j]udgments of

conviction based upon pleas of <u>nolo contendere</u> are not included.  This position is consistent with the treatment of <u>nolo</u> pleas in Rule 410 and the authorities cited in the Advisory Committee's Note in support thereof." Therefore, the same reasoning animates Rule 803(22) as Rule 410, that is, that pleas of nolo contendere and convictions on the basis of such pleas are not admissible for purposes of proving that the defendant is guilty of the crime in question.  However, the government did not introduce the certified copy of the conviction for purposes of proving that Adedoyin committed the California crime.  It offered the evidence solely for the purpose of showing that Adedoyin had a prior felony conviction. Accordingly, the district court correctly admitted the certified copy of the 1981 California conviction.

### III.  CONCLUSION

For the foregoing reasons the judgment of conviction and sentence entered July 15, 2002, will be affirmed.